And we'll turn to USA v. Angel Rosa and Jerry Mercado. Go ahead. Good morning. May it please the court. John Sarando appearing on behalf of the appellant Rosa. This is an appeal from a conviction for the crime of conspiracy to possess with intent to distribute heroin. The defendant was sentenced to serve 235 months imprisonment. I think the three arguments in our brief meld together. There was a total breakdown of the attorney-client relationship. When they asked him during sentencing, didn't he say that he was getting along with his attorney? He was getting along with his attorney. The problem you had... That he was satisfied with his representation. The problem you had, Your Honor, was the failure, at that point in time, to review the pre-sentence report at all with counsel. The court found that he had waived that. But a failure to discuss that in any event. And I think counsel had filed a motion to have the defendant examined by a psychiatrist. And the court denied that without prejudice with the opportunity to renew. And counsel never sought to renew that. And then one of the aspects, I think, that we raised and counsel attempted to raise in the court below, was the similar situation between my client and another co-defendant, Mo Betta. And I think probably due to the defendant's not speaking with the attorney at that time about that issue, not having the opportunity to be examined professionally in regard to any mitigation, I think contributed to the overall disparity in the sentence. As well as, I think when you go back, the plea itself was... The day in court that day was almost nine hours of proceedings from the start of jury selection, which the docket sheet indicates was seven hours, and then almost an hour and a half, or six and a half hours for the jury selection, and about an hour and a half for the plea proceeding itself. So we submit that when you look at it on the whole, that the relationship with counsel, the failure to file the subsequent motion, and the defendant not talking to counsel about the pre-sentence aspect, pre-sentence report aspect of the case, all contributed to deny the defendant the effective assistance of counsel and severely impacted the sentence in this case. Thank you. Thank you. You've reserved one minute. Good morning, Your Honors. May it please the court, Jennifer Smith on behalf of Jerry Mercado, the defendant appellant. The defendant raises one claim, that Mr. Mercado's sentence of 120 months for conspiracy with intent to possess heroin was substantively unreasonable. Although the district court did impose a sentence under the guidelines range, which was 151 months to 188 months, the sentence was still shockingly high under the totality of the circumstances. The district court did find that Mr. Mercado had a minor role in this conspiracy. His participation extended only over a three-week period, and of the 1,000 calls that were intercepted by the government throughout the investigation, only 12 calls involved Mr. Mercado, and only six of those 12 calls were related to drug activity. Mr. Mercado, in the grand scheme of this drug operation, was a very low-level seller. Only 10 grams of heroin were attributed to him. Even the government asked the court to downwardly depart from this guidelines range and impose a sentence of less than 151 months, but more than 120 months. Mr. Mercado's sentence is also alarmingly close to the sentences of the two principals in this conspiracy, who ended up receiving sentences of 165 months and 235 months. Here, Mr. Mercado's involvement doesn't even come close to that of the two principals. Primarily, the district court heavily relied on Mr. Mercado's criminal history and his classification as a career offender. It's our position that Mr. Mercado's designation as a career offender overstates the severity of his criminal history and overshadows his minimal role in the offense. What Judge Shea said was that he was especially alert to the fact that Mr. Mercado had had relatively significant periods of incarceration and returned to this activity as soon as he got out.  Our position, though, is also that the district court didn't give adequate mitigating effect to the fact that all of Mr. Mercado's criminal offenses occurred when he was between the ages of 16 and 18. In the brief, using the line of reasoning that our Supreme Court uses in the Miller v. Alabama and Graham v. Florida, that juveniles are different for the purpose of sentencing, that there are fundamental differences physiologically and psychologically between juveniles and adults, be it impulsivity, impetuosity, failure to appreciate risks and consequences, and that the court did not give mitigating weight to those characteristics in assessing Mr. Mercado's criminal offenses, again, all of which occurred between the ages of 16 and 18. With respect to his first conviction assault in the second degree, the victim was the armed aggressor, not Mr. Mercado, and the victim only sustained superficial injuries. With respect to his kidnapping offense, at his sentencing, the victim testified that, at best, this was characterized as a domestic dispute. The victim is also Mr. Mercado's girlfriend. And she also maintained that she did not want the case prosecuted. So the facts of these cases in conjunction with the court's failure to give mitigating effect to the defendant's youth at the time But when you add all of this up, how does that make Judge Shea's sentence shocking as opposed to high? I think, Your Honor, that not enough weight was given to Mr. Mercado's minimal involvement in this drug operation. As Your Honor is aware, there were 21 co-defendants in this case. It was a fairly large operation. And Mr. Mercado was certainly at the bottom of this. And again, when compared to the two principals of this who received sentences of 165 months, 235 months, Mr. Mercado's 120-month sentence puts him alarmingly close to the principals, when, in fact, he was only a very low-level seller. Counsel, giving too much weight, as you describe it, isn't that exactly the kind of issue on which we defer to the district court? Certainly, certainly. Much discretion, of course, must be given to the district court's sentence. However, it's our position that too much weight was given to his criminal history, which, in light of the facts of this particular offense, is overstated and overemphasized. And it sort of overshadows Mr. Mercado's minimal role in this. And it also, I think, overlooks the fact that he was only between 16 and 18 at the time of these offenses. I think more mitigating effects should have been given to that. How old was he at the time of sentencing? Pardon me? How old was he at the time of sentencing? He was 28 or 29, Your Honor. So he had 10 years without offenses? No, Your Honor. He was incarcerated for 8 1⁄2. Oh, 8 1⁄2 of those years. Yes, Your Honor. And he didn't commit an offense while he was in prison? No, Your Honor. I believe he only had possibly, I think, two disciplinary tickets at the time. Currently, since his incarceration on this offense, he's had zero. And in conclusion, we ask this court to vacate Mr. Mercado's 120-month sentence and remand it to the district court for resentencing. Thank you for your time. Thank you. We'll hear from the government. May it please the court. My name is Nancy Gifford. I'm an assistant United States attorney from the District of Connecticut, and I represent the United States on this appeal. If it pleases the court, I prefer to just address Mr. Mercado briefly, and then I will spend the bulk of my time with Mr. Rosa. With Mr. Mercado, again, he did receive a 120-month sentence, which was a below-guideline sentence. The court made a very profound and lengthy record talking about the defendant's extensive and violent history. It did acknowledge that Mr. Mercado was a late arrival to the conspiracy, having only been released from a halfway house on February 19, 2013. And as this court knows, the conspiracy that was charged in the indictment ended in April. The first interception that they had with Mr. Mercado was a month before the takedown on the search warrants, in which the conspiracy was the end of the charge on that conspiracy. But they could tell from the context of that call that it was not his first contact with the drug trafficking organization. Given his limited time in the conspiracy, all parties, the government and the defense council, agreed that the drug quantity was not what was driving this defendant's sentence, and the court acknowledged that in its sentence. The court stated that the guideline range was driven by the criminal history. The defense council argued that the criminal history overstated much of the arguments you heard today. The district court heard that argument and expressed its view that the defendant's criminal history necessitated a long sentence, because of the incremental approach to sentencing, and that the defendant's most recent sentence, which was 15 years, and he served eight and a half years, that the next sentence needed to be longer, especially given that the defendant immediately began engaging in criminal conduct right after his release from the halfway house. And the court even expressed that while incarcerated, the defendant did quite well, but while under supervision upon release, he seemed to be immediately being drawn back into criminal activity. And he wanted the sentence to reflect the seriousness of someone getting out of prison and immediately returning to criminal activity. So again, the court provided a substantial justification for its reason for the 120 month sentence. If there's no questions on that, I will turn to Mr. Rosa. The record shows that the court carefully considered the source of the conflict between defendant and his counsel, and properly concluded that there was no reason for counsel to withdraw, and there was no retrievable breakdown. Counsel's performance was objectively reasonable. And at each of the three stages discussed in Appellant's brief, the court acted appropriately. First, there was simply no intimidation of this defendant at the guilty plea stage or in the motion to withdraw as counsel. In each instance, the court gave the defendant time. First, on the motion to withdraw, the court, in fact, was ready to allow the defendant to obtain new counsel, and it was the defendant himself who said, no, no. I wish to stay with this counsel, and the court didn't just say, okay, and walk away. The court said, you know, you need time to talk outside the presence of the court. I want you to do that, and then I'll come back when you're ready, and said, no rush, I'll come back in. And when he came back on, defendant, again, emphatically stated he wanted to stay with his counsel. And again, at the guilty plea, while it had been a long day, and the court, in fact, started the guilty plea reflecting on that, saying it's been a long day, but this is important. And we're going to go slow, and you can take time to talk to your counsel. The court's record shows it was very careful and thoughtful, and certainly was not intimidating. As to whether the guilty plea was knowing and voluntary, the record is replete with the defendant and defense counsel saying that they both understood what was going on, that the counsel believed that his client understood what was going on. In fact, at certain points in time, the court stopped to talk about, for instance, two changes that were made to a guilty plea for the defendant's benefit. And when they asked the defendant, do you understand what's going on? And he says, no, no, I totally understand it, you couldn't paint it any other way. His expressions were unqualified expressions of understanding what was going on. And as this court knows, there's a strong presumption of accuracy awarded to a defendant's sworn testimony. As to the motion to withdraw the guilty plea, this was submitted by defense counsel against the advice of counsel. Defense counsel was quite concerned that there were going to be extreme repercussions from this, including the filing of a second offender notification, which would have enhanced his mandatory minimum to 20 years. And the challenge to the Drug Quantity Defense Counsel, again, did not want to submit this because they didn't feel there was any legal justification to do so. And the court, in fact, having reviewed it and reviewed the pro se's motion, so in fact it was before the court, the court itself agreed there was no justification for that. As to competency, there was absolutely no abuse of discretion. The record shows that Mr. Rosa was very involved in his plea and his sentencing. There was no evidence and no reasonable cause to believe that he was incapable of rationally comprehending the nature and objective of the proceedings. The defendant's claim that the court should have intuited this post plea after a lengthy hearing in which defendant repeatedly expressed his The defendant was involved in the plea, in fact, stopped the plea proceedings at one point to inquire about what the impact of his plea would be on his pending state charges. And upon hearing that there could be no assurance on that, chose to continue to go forward. It's just one example of how the defendant really made sure he understood the consequences of what he was doing. He also wanted a change to the plea agreement to reflect that the items that were being forfeited did not belong to him. He didn't want to have it attributed to him. And second, I'm sorry, and third, there was an addition of an appellate waiver to his benefit. That is, they took out the appellate waiver and gave him the right to appeal. At sentencing, the defendant self-advocated. At one point, there was a discussion on whether or not he was part of a gang. And he addressed the court to talk about the fact that he had actually completed a program in court to renounce his gang membership. And he said, you don't need to take my word for it, I have a certificate. He was very clear about wanting to be involved in that. Again, the forfeiture and his appellate, the defendant stood up at the end of sentencing and made it very clear that he wanted to appeal the sentence. Again, self-advocating and understanding what was going on during the proceedings. The fact the defendant was misguided on the legal application of drug quantity certainly does not rise to the level of mental competency. And finally, Mr. Rose's sentence was not substantially unreasonable, and it was not shockingly high. It was at the top end of a guideline range, but he received the benefit of only a three level enhancement for role rather than four, which the court indicated it was considering applying. But defense counsel was able to talk to the judge and convince the judge that three levels was appropriate. In addition, defense counsel successfully argued for a two level reduction based on the guideline changes. When you talk about the difference between his co-defendant, Mobetta, there are several reasons for that distinction. The government, in its joint appendix 578 and 579, discussed both the criminal history. Mr. Mobetta was a criminal history five, Mr. Rosa was a criminal history six. In addition, the government advocated for a third level of acceptance of responsibility for Mobetta, but only two level for Mr. Rosa because he waited until after jury selection to offer his guilty plea. But the significant reason for the distinction in which the district court was very eloquent about, and if I may, I'm just going to quote, the judge said, I understand about Mr. Mobetta's, the comparison being provided by your defense attorney. But, and here's the quote, I have sentenced all of the defendants in this case. You were at the top of the pyramid. I listened to the calls with Mobetta, and there is no question in my mind who was in charge. Another quote was, you were the number one person responsible for product on the street. The district court judge made it very clear why he was treating Mobetta and Mr. Rosa differently. Thank you. Thank you, your honors. Council is reserved one minute. Very briefly, the government, on page 530 of the joint appendix, seems to equate the defendant's conduct with that of Mobetta in their sentencing memorandum. And in addition, it appears that Mobetta had another conspiracy going on, separate and apart from this conspiracy, which he didn't want the defendant to know about. Insofar as the motion for the psychiatric examination, there obviously had to be something there in the first instance to cause counsel to make such a motion. But then when given the opportunity to follow up, he never followed up. So I think there's a hole in the proceedings, and thank you very much. Thank you. We'll reserve decision.